UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FULTON Q. GRIFFITH,

                      Petitioner,

-vs-                                                         Case No. 8:08-cv-457-T-17TBM

SECRETARY DEPT. OF CORRECTIONS,
WARDEN BRYANT,

                      Respondents.
_____

## **ORDER**

Before this Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Fulton Q. Griffith, a Florida prisoner. The petition attacks Griffith's convictions for possession of cocaine with intent to sell or deliver within 1,000 feet of a school, battery on a law enforcement officer, and resisting arrest with violence in Case No. 2002-CF 2058, arising out of charges filed in the Twelfth Judicial Circuit in Sarasota County, Florida.

PROCEDURAL HISTORY

On February 7, 2003, the State Attorney filed an Amended Information charging Griffith with one count each of possession of cocaine with intent to sell or deliver within 1,000 feet of a school, possession of paraphernalia, battery on a law enforcement officer,

and resisting arrest with violence. (Exh 25: Vol. 1: 31-34).[1] Griffith filed a motion to suppress physical evidence which was denied after a hearing. (Exh 25: Vol. 1: R 27-28; Vol. 2: 123-176).

Change of Plea

On February 11, 2003, the morning of trial, after the jury was selected and sworn, Griffith announced his intent to change his plea to nolo contendere. (Exhibit 1: Change of Plea Transcript). The Honorable Thomas M. Gallen, Circuit Judge, presided. Griffith was represented by Mark R. Zimmerman, Esquire. Griffith entered a "straight up" plea, reserving the right to appeal the denial of the motion to suppress. The court found the plea to be intelligent, knowing, and voluntary, and adjudicated Griffith guilty on all four charges. After accepting the plea, the court sentenced Griffith to thirty (30) years imprisonment on the possession of cocaine count, 11 months, 29 days on the possession of paraphernalia count, and five years each on the battery on a law enforcement officer and resisting arrest counts, all terms to run concurrently. (Exh 25: Vol. 1: 98-102; Vol. 2: R 223-224). On the battery on a law enforcement count, Griffith was sentenced as a prison releasee reoffender. (Exh 25: Vol. 1: R 102).

Motions to Withdraw Plea

Griffith's attorney filed a notice of appeal on February 28, 2003. (Exh 25: Vol. 1: R 77). On March 4, 2003, Griffith, pro se, filed a motion to withdraw plea.[2] (Exh 25: Vol. 1: R

---

[1] Respondent filed the two-volume record in Griffith's direct appeal as Respondent's Exhibit 25. Volume One contains the documentary records, and Volume Two contains suppression hearing transcript and the change of plea transcript.

[2] The record indicates that on February 14, 2003, Griffith filed a pro se motion to withdraw plea without stating any factual support. (Exh 25: Vol. 1: R 74-75). It is not clear whether the trial court was aware of this motion.

2

86-92). In that motion, he alleged his plea was involuntary because his counsel advised Griffith if he waived a jury trial, his sentence would be a "little over the bottom of the guidelines," which was five 5-1/2 years. Griffith also asserted his plea was involuntary because counsel informed Griffith that if he invoked his right to trial, the State would seek the maximum sentence and habitual offender status, and the court was certain to give Griffith both. On March 24, 2003, Griffith filed a pro se supplement to the motion to withdraw plea. (Exh 25: Vol. 1: R 105-107). The trial court dismissed both the motion and the supplement on April 21, 2003. (Exh 25: Vol. 1: R 114-116). Because these motions were filed after the notice of appeal, the court lacked jurisdiction to consider them.

## Direct Appeal

Griffith pursued a direct appeal. His appellate counsel, Assistant Public Defender Anthony C. Musto, filed an initial brief (Exhibit 2), raising the following issue:

> THE TRIAL COURT ERRED IN DENYING MR. GRIFFITH'S MOTION TO SUPPRESS PHYSICAL EVIDENCE WHEN THE OFFICER LACKED PROBABLE CAUSE TO ARREST MR. GRIFFITH AND LACKED A FOUNDED SUSPICION TO DETAIN MR. GRIFFITH.

The State filed an answer brief, and Griffith filed a reply brief. (Exhibits 3 & 4). On November 21, 2003, in Case No. 2D03-1278, the Second District Court of Appeal filed a per curiam silent affirmance of the trial court's denial of the motion to suppress. (Exhibit 5). *Griffith v. State*, 871 So. 2d 223 (Fla. 2d DCA 2003). Griffith filed a motion for rehearing, which the appellate court denied as untimely. (Exhibit 6). The mandate was issued on February 6, 2004. (Exhibit 7).

## Postconviction Proceedings

On December 15, 2003, Griffith, pro se, filed a motion to withdraw his plea pursuant

3

to Rule 3.170 of the Florida Rules of Criminal Procedure. (Exhibit 8). Griffith alleged that his plea was involuntary because his trial attorney told him that he would receive a sentence of a little over five and a half years incarceration if he entered a plea. Griffith further alleged that counsel coerced him into entering a plea by telling him that he would receive the maximum sentence if he went to trial. Finally, Griffith alleged that trial counsel was ineffective for failing to object to scoresheet errors and failing to reserve the right to appeal the denial of a motion to suppress.

On January 2, 2004, Griffith filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Exhibit 9). Griffith asserted in a conclusory manner that counsel was ineffective for failing to subject the prosecution's case to meaningful adversarial testing. In an attached unsworn memorandum of law, Griffith asserted that counsel failed to depose material witnesses, barred Griffith from coming to his office, refused to have a trial, refused to file a motion to suppress evidence, refused to call material witnesses at a suppression hearing, refused to proffer evidence to controvert the State's evidence, refused to let Griffith take the witness stand, lied to Griffith and his family about having filed a motion to suppress, refused to bargain with the State for a reasonable plea, told Griffith and his family that he would receive a sentence of a little over five and a half years if he entered a plea, refused to ask the prosecutor to allow Griffith to take a polygraph examination, and refused to discuss certain defenses.

On January 12, 2004, the circuit court entered an order dismissing Griffith's motion to withdraw plea as untimely and dismissing Griffith's motion for postconviction relief because his direct appeal was pending. (Exhibit 10). Griffith apparently refiled his motion to withdraw plea on February 9, 2004. On March 1, 2004, the postconviction court entered

4

an order granting Griffith an evidentiary hearing on the claims raised in his motion to withdraw plea, which the court treated as a Rule 3.850 motion for postconviction relief. (Exhibit 11).

On March 16, 2004, Griffith refiled his motion for postconviction relief. (Exhibit 12). He also refiled his unsworn memorandum of law. (Exhibit 13). An evidentiary hearing was held on November 16, 2004, before the Honorable Harry M. Rapkin, Circuit Judge. (Exhibit 14). Griffith proceeded pro se, with court counsel, Robert Hoffman, present. The hearing encompassed both Griffith's motion to withdraw plea in case number 02-2058 and a motion for postconviction relief in case number 96-18789. On November 22, 2004, the circuit court entered an order denying relief on both of Griffith's motions. (Exhibit 15). Griffith appealed the adverse ruling. The cases were consolidated for purposes of appeal. On March 10, 2006, in Case No. 2D04-5767, the appellate court filed a written opinion reversing and remanding for a new evidentiary hearing in both cases. (Exhibit 16). *Griffith v. State*, 922 So. 2d 436 (Fla. 2d DCA 2006).

A new evidentiary hearing was held on July 7, 2006 in both the 2002 and 1996 cases, with a different judge, the Honorable Charles E. Roberts, presiding. (Exhibit 17: Excerpt of transcript relating to Case No. 02-2058 only). The court heard testimony from Petitioner Griffith and trial counsel, Mark Zimmerman. Griffith was represented by Assistant Public Defender Mark Miller. On July 25, 2006, the postconviction court entered an order denying Griffith's motion to withdraw his plea in case number 02-2058 and his motion for postconviction relief in case number 96-18789. (Exhibit 18). In denying relief on the claims in Griffith's motion to withdraw plea, the court found Griffith was not coerced or misadvised and had not presented any evidence on his claim that counsel was ineffective for failing to

5

object to the scoresheet.

On appeal in the 2002 case, Griffith filed a pro se initial brief after his appointed counsel withdrew. (Exhibit 19). The State filed a supplemental answer brief addressing Griffith's brief in Case No. 2002-CF-2058. (Exhibit 20). On February 20, 2008, in Case No. 2D06-3618, the Second District Court of Appeal filed a silent per curiam affirmance of the postconviction court's denying relief in the 2002 and 1996 cases. (Exhibit 21). *Griffith v. State,* 978 So. 2d 167 (Fla. 2d DCA 2008)[table].

Griffith sought discretionary review in the Florida Supreme Court. On March 7, 2008, in Case No. SC08-405, the Florida Supreme Court filed an order dismissing the case for lack of jurisdiction. (Exhibit 22). *Griffith v. State*, 979 So. 2d 219 (Fla. 2008)[table]. Shortly thereafter, on April 23, 2008, the Second District Court of Appeal issued its mandate in Case No. 2D06-3618. (Exhibit 23).

## THE PRESENT PETITION

Griffith timely signed and filed the § 2254 petition on February 28, 2008. He raises one ground for relief, asserting trial counsel was ineffective for failing to advise Griffith that there was evidence supporting an affirmative defense to the charges. Specifically, Griffith alleges there was evidence to show that a police officer involved in the detention of Griffith "fabricated a hand to hand exchange of money for a dark object 'small' to establish he had founded suspicion to detain petitioner." (*See* § 2254 petition at page 6).

A review of the entire state court record reveals the nature of Griffith's argument. Basically, he contends as he did in his postconviction proceedings, that counsel was ineffective for failing to argue during the pre-plea motion to suppress physical evidence that the detention of Griffith was unlawful, and therefore his arrest was also unlawful. The crux

of Griffith's claim appears to be that he has the right to batter a police officer and resist arrest with violence if the initial detention was unlawful. Griffith is attempting to challenge trial counsel's conduct at the suppression proceeding in state court prior to his change of plea. This claim must be denied for at least two reasons. First, the claim is barred by entry of Griffith's voluntary nolo contendere plea. Second, the claim must be denied for failure to satisfy the prerequisites of 28 U.S.C. § 2254(d) and (e).

TOLLETT BAR

First, the ground raised in the petition is barred by entry of Griffith's voluntary plea. It is well-established state and federal law that guilty or nolo contendere pleas waive all but jurisdictional claims up to the time of the plea. *See United States v. Broce*, 488 U.S. 563 (1989)(when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)(holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)(finding a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial).

The waiver by plea includes claims of ineffective assistance which do not implicate the validity of the plea. *See Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992)(pre-plea ineffectiveness waived); *Matthew v. Johnson*, 201 F. 3d 353, 364 (5th Cir. 2000) (noting longstanding rule that valid guilty plea bars habeas review of non-jurisdictional claims alleging antecedent violations of constitutional rights). By entering a voluntary guilty or no

contest plea, a defendant relinquishes the right to a jury trial, to assistance of counsel, to raise a defense, and to confront his or her accusers. *See Boykin*, 395 U.S. at 242-44; *Broce,* 488 U.S. at 573 (1989) (relinquishment derived not from inquiry into defendant's subjective understanding of range of potential defenses, but from admissions necessarily made upon entry of voluntary guilty plea).

In the instant case, Griffith does not directly claim his plea was involuntary. Rather, he claims counsel was ineffective for failing to advise him of grounds for suppressing physical evidence. The issues he raises in the federal petition concern complaints of errors by defense counsel occurring prior to the entry of the plea and are not connected with the intelligent, knowing, and voluntary nature of the plea itself. Consequently, ground one is barred and does not warrant habeas corpus relief.

**The Governing Legal Principles**

Because Griffith filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir.2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir.2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir.2005), *cert. denied*, 549 U.S. 819 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

9

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e) (1).

<u>Exhaustion of State Court Remedies and Procedural Default</u>

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state

Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Griffith must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Griffith must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction."

*Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"[t]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

<u>No Presumption that the State Court Ignored Its Procedural Rules</u>

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman,* 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, (1984), established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir.1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

FAILURE TO SATISFY PREREQUISITES OF 28 U.S.C. 2254(d) and (e)

The state court afforded Griffith a full and fair suppression hearing on the issue of the lawfulness of his arrest. After the trial court denied the motion, Griffith entered a nolo contendere plea to the charges, reserving the right to appeal the denial of the motion to suppress. The denial was affirmed on appeal, after briefing by both parties. In his motion to withdraw plea, refiled in the trial court on February 9, 2004, Griffith alleged that his plea was involuntary because his trial attorney told him that he would receive a sentence of a little over five and a half years incarceration if he entered a plea, that counsel coerced him into entering a plea by telling him that he would receive the maximum sentence if he went to trial, and that trial counsel was ineffective for failing to object to scoresheet errors and failing to reserve the right to appeal the denial of a motion to suppress. Griffith was granted a hearing on the voluntariness of his plea and the issue of scoresheet errors. Prior to the hearing, Griffith filed a pro se Motion for Res Judicata/Law of Case Doctrine, which the trial court denied in an amended order issued June 23, 2006. (Exhibit 24). As the state court correctly remarked, Griffith "erroneously argues that a ruling in his case had been made that Defendant's initial detention was unlawful..." "In fact," the court pointed out, "the Motion to Suppress (copy attached), was denied on the basis that even if there had been an unlawful detention, the violence on the part of the Defendant justified the Defendant's arrest and subsequent search." (Exh 24 at p. 2).

During the evidentiary hearing on the motion to withdraw plea, which was treated as a Rule 3.850 motion for postconviction relief, Griffith was adamant in pressing his claim that counsel was ineffective for insufficiently raising the claim that the arrest was illegal.

(Exh 17 at T 150-152; 154; 169-170).[3] The postconviction court, while finding the suppression argument was irrelevant in determining the voluntariness of Griffith's plea, nonetheless allowed both Griffith and his postconviction counsel to cross-examine trial counsel in this regard. (Exh 17 at T 200-216).

Finally, even if a claim of ineffective assistance of counsel regarding the suppression proceeding is properly before this Court, Griffith's claim must fail. In order to show a violation of the Sixth Amendment right to counsel, Griffith must satisfy the two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Bell v. Cone*, 535 U.S. 685, 698 (2002)(courts should apply *Strickland* to claims that counsel failed to satisfy constitutional requirements at specific points). First, Griffith must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, Griffith must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Griffith must prove both prongs of *Strickland*. Therefore, if he fails to establish either deficient performance or prejudice, the court need not address the other prong. *Strickland,* 466 U.S. at 697 ("There is no reason for a court deciding an

---

[3] Griffith continues to contend that the state has never addressed his police fabrication claim. He contends that his privately retained trial counsel should have raised the issue at the "trial court proceedings." Griffith claims that DeValle, the police officer, fabricated his sworn statement that he saw Griffith sell narcotics to Battle and saw Battle give Griffith money for the narcotics. This alleged police fabrication was the cause of the police officer's originally detaining Griffith. (See Doc. Nos. 15, 18, 19, 20, 21, 22). The Court finds no merit in this contention based on the facts of this case and the applicable law.

ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,...that course should be followed."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In this case, the state court's denial of Griffith's ineffective counsel claim is neither contrary to, nor an unreasonable application of, the *Strickland* standard.

Griffith contends the initial detention was unlawful and that he had a right to resist an illegal detention. He is wrong on both points. As the State correctly argued in the brief on direct appeal, the detention was based on founded suspicion and was therefore lawful. Alternatively, even if there was no founded suspicion justifying the initial stop, Griffith's arrest was still valid. The State correctly argued in its answer brief as follows:

> Even if the Court were to find that the officer did not have a founded suspicion to detain Appellant initially, the trial court properly noted that a person may not use force or violence to resist an unlawful arrest or illegal detention and denied the motion to suppress. This Court recognized this principle in *Lang v. State*, 826 So. 2d 433 (Fla. 2d DCA 2002). Specifically, the Court stated:
>
>> Even assuming the officers in this case did not have reasonable suspicion to detain Mr. Lang for auto theft, Mr. Lang resisted the officer's stop with violence and committed a battery on a police officer. This act against the officer was unlawful regardless of any potential technical illegality in the officer's initial stop. *See, e.g., Nesmith v. State*, 616 So.2d 170, 171 (Fla. 2d DCA 1993). Once Mr. Lang committed the battery against the police officer, the police had probable cause to arrest him and to conduct the search incident to that arrest, during which the firearm was discovered on his person. *See Lennear v. State*, 784 So.2d 1181, 1183 (Fla. 5th DCA 2001) (citing *Reed v. State*, 606 So.2d 1246 (Fla. 5th DCA 1992); *Jones v. State*, 570 So.2d 433 (Fla. 5th DCA 1990)); *see also Bradford v. State*, 567 So.2d 911, 914 (Fla. 1st DCA 1990). . . . [emphasis added]

826 So. 2d at 435.

> Under the above reasoning, even if it is assumed for the sake of argument that Officer DeValle did not have founded suspicion to stop and detain Appellant based on his earlier observations, when Appellant hauled off and hit the officer in the mouth and knocked him to the ground, the officer then had probable cause to arrest Appellant for battery on a law enforcement officer and resisting an officer with violence (both of which Appellant was charged with below) and conduct a search incident to his valid arrest for those offenses. *See State v. McCray*, 626 So. 2d 1017, 1019 (Fla. 2d DCA 1993)("once an officer has probable cause to arrest the defendant, the officer can conduct a search of that person as incident to the arrest . . . ."). Since the cocaine was found in this valid search incident to arrest, the trial court properly denied Appellant's motion to suppress the cocaine.
>
> In sum, Appellant is not entitled to relief because the officer had founded suspicion to detain Appellant to investigate the hand-to-hand transaction he had witnessed. However, even if the Court were to find that the officer did not have founded suspicion for the initial stop, Appellant's behavior in committing battery on a law enforcement officer led to his lawful arrest and the cocaine that was discovered in the search incident to that valid arrest is not suppressible based on any illegality in the initial detention.

(Exh 3: Answer Brief of Appellee at pp. 12-14).

Trial counsel was not ineffective for failing to advise Griffith of a defense (police fabrication) to the charges. Even if Griffith could have produced evidence that the officer' observation of a hand-to-hand transaction had been fabricated, such evidence would not have affected the results of Griffith's case. As determined by the trial and appellate courts, Griffith's arrest was lawful even if the initial stop had not been based on founded suspicion. Accordingly, the postconviction court's denial of Griffith's motion for postconviction relief was objectively reasonable and entitled to deference under the AEDPA.

Accordingly, the Court orders:

That Griffith's petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Griffith and to close this case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 23, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Fulton Q. Griffith